UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. CR 11-306(EGS) |
| ) | |
| v. ) | **FILED** |
| ) | |
| PEDRO ALEJANDRO RUBIO-PEREZ, ) | APR - 3 2018 |
| ) | |
| Defendant. ) | Clerk, U.S. District & Bankruptcy |
| ) | Courts for the District of Columbia |

## STATEMENT OF FACTS

Were this case to proceed to trial, the United States of America would prove the following facts at trial beyond a reasonable doubt:

1. This proffer of evidence is not intended to constitute a complete statement of all facts known by Defendant **PEDRO ALEJANDRO RUBIO-PEREZ** (hereinafter, "Defendant"), but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea and his sentencing. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for Defendant's plea of guilty to the charged offense, which carries with it a mandatory statutory minimum sentence. The Government submits that had there been a trial in this matter, the Government would have proven each of the facts as outlined beyond a reasonable doubt, and further that the facts satisfy each of the essential elements of the charge, as well as the amount and type of drugs involved, to which the Defendant is entering his plea.

2. The Defendant was a part of a conspiracy that existed from approximately 1999, continuing to 2009, in the countries of the United States, Mexico, and elsewhere, the object of which was to distribute multi-ton quantities of cocaine and marijuana, intending and knowing that those controlled substances would be unlawfully imported into the United States, in violation of

21 U.S.C. §§ 959, 960, and 963; and aiding and abetting of the same, in violation of 18 U.S.C. § 2.

3.      During the course and in furtherance of the conspiracy that existed from on or about 1999 through 2009, the Defendant and members of a drug trafficking organization ("DTO") acquired, manufactured, and transported cocaine and marijuana in Mexico for importation and distribution in the United States. The Defendant and DTO members utilized tractor trailers with hidden compartments to transport shipments of 100 kilograms of cocaine every few weeks. Additionally, tractor trailers were also utilized to transport shipments of one to three tons of marijuana every few months. The DTO also coordinated the movement of drug proceeds from the sale of said controlled substances from the United States to Mexico.

4.      For example, during the course of the conspiracy, DTO members acquired and imported cocaine from Mexico into the United States for further distribution. Specifically, on May 19, 2004, United States Drug Enforcement Administration agents seized approximately 152 kilograms of cocaine, $40,980 in United States currency, and drug packaging paraphernalia from the home of one of the Defendant's co-conspirators in Yucaipa, California. At another location located in Moreno Valley, California that was connected to the DTO, officers seized approximately 22 pounds of marijuana. Prior to the seizure of the 152 kilograms of cocaine, recorded phone calls demonstrate that the Defendant coordinated with other DTO members the incoming shipment of cocaine into the United States from Mexico. The phone calls also demonstrate the Defendant's knowledge of the shipment and his intent to import 152 kilograms of cocaine from Mexico into the United States.

5.      In addition, in August 2006, the Defendant coordinated with members of the DTO the transportation of 1,000 kilograms of marijuana in a tractor trailer. The United States Drug

Enforcement Administration agents seized approximately 451 kilograms of this marijuana in Phoenix, Arizona in a tractor trailer utilized by the DTO for the transportation of illicit proceeds and controlled substances.

6. Then too, on October 28, 2006, during a traffic stop in Springfield, Missouri, law enforcement seized 90 kilograms of the Defendant's cocaine in a hidden compartment within the refrigeration unit of a tractor trailer.

7. During the course of the conspiracy, members of the DTO, including the Defendant, utilized cellphones to coordinate the sale of cocaine and other controlled substances in the United States on behalf of the DTO. Further, DTO members, including the Defendant, using cellphones, coordinated the transfer of the cash receipts of these drug purchases from the United States into Mexico.

8. With regard to the transfer of drug proceeds, during the course of the conspiracy, DTO members acquired and returned proceeds of the marijuana and cocaine sales from the eastern portion of the United States to the Defendant and his DTO. After the cocaine or marijuana was sold to the Defendant's clients in the United States, the clients would provide the proceeds of the sale of those shipments to the Defendant's drug transporters. These drug transporters loaded the money into the same tractor trailers that delivered the drug shipment and delivered the illicit proceeds to areas close to the U.S./Mexico border, where it was counted before being transferred to the Defendant in Mexico. The Defendant would receive bulk cash inside of truck containers as payment for cocaine and marijuana imported into and sold in the United States. The currency seizure of $40,980 in Yucaipa, California on May 19, 2004, referenced above, constituted proceeds from the sale of narcotics in the U.S. The drug proceeds were stored in a stash house and, but for the seizure, would have been transported to the defendant in Mexico.

9. The Defendant admits that the total amount of cocaine involved in this conspiracy that is directly accountable to him as a result of his own conduct and as a result of the conduct of other conspirators reasonably foreseeable to him was at least four hundred and fifty (450) kilograms or more.

10. The Defendant admits that the total amount of marijuana involved in this conspiracy that is directly accountable to him as a result of his own conduct and as a result of the conduct of other conspirators reasonably foreseeable to him was at least forty-five thousand (45,000) kilograms or more.

11. The Defendant knew that the cocaine, and marijuana distributed by the DTO was ultimately going to be unlawfully imported into the United States.

12. This proffer does not purport to include all of the Defendant's illegal conduct during the course of his charged offense. It represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter and is not intended to represent all of the Defendant's relevant conduct for sentencing purposes. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the Defendant's plea of guilty to the charged offense. Had there been a trial in this matter, the Government would have proven each of these facts beyond and to the exclusion of every reasonable doubt. The parties agree that the above-outlined facts satisfy each of the essential elements of the charge to which the Defendant is entering his plea. The Defendant acknowledges that there are additional details about his involvement in the drug trafficking conspiracy that are not included in this statement.

13. The Defendant agrees venue and jurisdiction pursuant to 18 U.S.C. § 3238 lie with this Court.

14. The Defendant also agrees that his participation as a conspirator in the above-described acts was in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

15. The Defendant is pleading guilty because the Defendant is in fact guilty.

ARTHUR G. WYATT, CHIEF
United States Department of Justice
Narcotic and Dangerous Drug Section

Date: 3.26.18          By: _____
                            Emily Cohen, Trial Attorney
                            LaRai Everett, Trial Attorney
                            Narcotic and Dangerous Drug Section
                            United States Department of Justice
                            Narcotic and Dangerous Drug Section

Date: 3.26.18          By: _____
                            Amanda Liskamm
                            Deputy Chief

5

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this factual proffer and have discussed it at length with my attorney, Manuel Retureta, Esq. This factual proffer has been translated into Spanish for me. I understand that the English version controls. I fully understand this factual proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement. I am satisfied with the legal services provided by my attorneys in connection with this factual proffer and Plea Agreement and matters related to it.

_PEDRO A. RUBIO PEREZ_   _3/21/18_
Pedro Alejandro Rubio-Perez        Date
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have carefully reviewed every part of factual proffer with the Defendant in the Spanish language.

_[signature]_   _3/21/18_
Manuel Retureta        Date
Attorney for Defendant

6